## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ERMA ROSENTHAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | C.A. No. |
| | ) | |
| | ) | |
| ASTRAZENECA | ) | |
| PHARMACEUTICALS LP, | ) | |
| ASTRAZENECA LP, | ) | |
| and ZENECA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

### COMPLAINT

COMES NOW the Plaintiff Erma Rosenthal, by counsel, and for her Complaint against Defendants AstraZeneca Pharmaceuticals LP, AstraZeneca LP, and Zeneca, Inc., ("AstraZeneca"), jointly and severally allege as follows:

1.     This action is brought by Plaintiff seeking damages for personal injuries and economic damages suffered as a result of a defective and dangerous pharmaceutical product, Seroquel, which was manufactured, marketed, distributed and/or sold by AstraZeneca to the general public.

### PARTIES

2.     Plaintiff, Erma Rosenthal, is a resident of Mississippi. Erma Rosenthal was prescribed, purchased and ingested Seroquel. After using Seroquel, Plaintiff was diagnosed with Diabetes Mellitus.

3.     Defendant AstraZeneca Pharmaceuticals LP is a foreign (Delaware) limited partnership, which does business in the District of Columbia and throughout the United States by manufacturing, distributing, marketing, selling and/or profiting from

earned as a result of Defendant's conduct as alleged herein.

81.  Defendant has been unjustly enriched at the expense of and to the detriment of the Plaintiff.

WHEREFORE, the Plaintiff demands judgment against Defendants AstraZeneca Pharmaceuticals LP, AstraZeneca LP, and Zeneca. Inc., ("AstraZeneca"), jointly and severally in a sum in excess of $75,000.00, for compensatory and punitive damages together with attorney fees plus interest from date of injury, costs herein incurred, and for such other and further relief as this Court deems just and proper.

Respectfully submitted,

AYLSTOCK WITKIN SASSER PLC

*Kenneth W. Smith*

BY:_____
Kenneth W. Smith
DC Bar No. 447748
4400 Bayou Blvd., # 58
Pensacola, FL 32503
(850) 916-7450
(850) 916-7449
ksmith@aws-law.com

**ATTORNEY FOR PLAINTIFF**

DATED:        January 30, 2007
             Pensacola, Florida

19

## DEMAND FOR JURY TRIAL

Demand is hereby made for a trial by jury.

Respectfully submitted,

AYLSTOCK WITKIN SASSER PLC

*Kenneth W. Smith*

BY:_____
Kenneth W. Smith
DC Bar No. 447748
4400 Bayou Blvd., # 58
Pensacola, FL 32503
(850) 916-7450
(850) 916-7449
ksmith@aws-law.com

**ATTORNEY FOR PLAINTIFF**

DATED:     January 30, 2007
             Pensacola, Florida

Seroquel in the State of Illinois and the United States. AstraZeneca Pharmaceuticals LP, is the U.S. Subsidiary of AstraZeneca PLC, and was created as a result of the union of Zenaca Pharmaceuticals and Astra Pharmaceuticals LP in the U.S. after the 1999 merger. AstraZeneca Pharmaceuticals LP's principal place of business is in Delaware.

4.    At all times material hereto, AstraZeneca PLC and AstraZeneca Pharmaceuticals LP (a wholly owned subsidiary of AstraZeneca PLC) (collectively referred to as "AstraZeneca") have shared many of the same officers and directors and have had a unity of interest in ownership sufficient to make them indistinguishable.

5.    Defendant AstraZeneca LP is a foreign (Delaware) limited partnership, which does business in the District of Columbia and throughout the United States by distributing, marketing, selling and/or profiting from Seroquel in the District of Columbia and throughout the United States.

6.    Defendant Zeneca, Inc., is a foreign (Delaware) corporation, which does business in the District of Columbia and throughout the United States by distributing, marketing, selling and/or profiting from Seroquel in the District of Columbia and throughout the United States.

**JURISDICTION AND VENUE**

7.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. There is complete diversity of citizenship between Plaintiff and the Defendant and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8.    Venue in this Court is proper pursuant to 28 U.S.C. § 1391(a)(2) and (3), in that a substantial part of the events or omissions giving rise to the following claims occurred in this judicial district and/or the defendant is subject to personal jurisdiction as

it has inter availed itself of this court in other legal proceedings.

## FACTUAL BACKGROUND

9.    In June 1997, the Food and Drug Administration ("FDA") approved the newest "atypical anti-psychotic", Seroquel (quetiapine fumarate), for use in the United States. At that time, Seroquel was approved for use in dosages of 50mg, 100mg, or 200 mg.

10.    The prescription drug "Seroquel" (quetiapine fumarate) is an "anti-psychotic" medication, belonging to a class of drugs referred to as "atypical anti-psychotics." (Other atypicals include Zyprexa (Eli Lilly), Risperdal (Johnson & Johnson), and Abilify (Bristol-Myers Squibb), which have been in use in the United States since the early to mid 1990's.

11.    Seroquel is a medication commonly prescribed to patients to aid in the treatment of mental disorders including schizophrenia. The pharmacologic action of Seroquel is thought to be dependent on its ability to block or moderate the level of dopamine; a chemical found in the brain that in excessive amounts is believed to cause abnormal thinking and hallucinations. It appears to work primarily by blocking neurotransmitter sites of serotonin and dopamine, as well as muscarinic and alpha-adrenergic, and histamine receptors.

12.    AstraZeneca obtained, licensed, manufactured, promoted, marketed, developed and placed in the stream of commerce the pharmaceutical "quetiapine fumarate" which was sold in the United States under the trade name "Seroquel."

13.    From at least 1997 through today, the Defendant manufactured, labeled, packaged, distributed, supplied, marketed, advertised, dispensed and sold, and by said

3

activities, caused Seroquel to be placed into the stream of commerce throughout the United States, including the State of Illinois, and to ultimately reach the s for consumption.

14.    At all times material hereto, AstraZeneca did manufacture, create, design, test, label, sterilize, package, distribute, supply, market, sell, advertise, warn, and/or otherwise caused the product Seroquel to be placed into the stream of commerce, and ultimately to be ingested by the Plaintiff.

15.    Seroquel was widely advertised, marketed and represented by AstraZeneca as a safe and effective atypical anti-psychotic.

16.    The product warnings for Seroquel in effect during the relevant time period were vague, incomplete or otherwise wholly inadequate, both substantively and graphically, to alert prescribing physicians as well as consumer patients of the actual risks associated with this drug.

17.    The use of Seroquel has been has been known to cause serious and sometimes fatal injuries to the liver, kidneys, and pancreas. Its adverse effects include, but are not limited to, ketoacidosis, pancreatitis, and diabetes mellitus, and other serious health problems associated with diabetes including heart disease, blindness, coma, seizures, and death. In addition to an increased risk of developing diabetes mellitus, and the serious complications streaming therefrom, including seizures, coma, death, liver disease, kidney disease, blindness, other serious side effects including rapid weight gain, pancreatitis, increased thirst, urinary frequency and hyperglycemia have been attributed to Seroquel.

18.    The reported risk associated with Seroquel and the onset of diabetes is nearly 3.34 times higher than older drugs used to treat schizophrenia, such as Haldol. According to these reports, compared to other drugs in its class, Zyprexa, (Eli Lilly & Co.) – 1.27 times more likely, and Risperdal (Johnson & Johnson) – 1.49 times more likely, Seroquel has a much greater increased association with the onset of diabetes mellitus than any other anti-psychotic on the market.

19.    Seroquel was marketed heavily by AstraZeneca as a safe and effective treatment for the treatment of schizophrenia, promising fewer side effects than other similar treatments including the other atypical antipsychotics on the market.

20.    AstraZeneca, through its marketing department, its sales managers, and field sales force promoted the drug for uses beyond its approved indications, offering incentives to doctors to increase prescriptions. Through these marketing efforts, AstraZeneca was able to capture a larger market share in the anti-psychotic market.

21.    These marketing efforts were designed and implemented to create the impression in physicians' minds that Seroquel was safe and effective for his patients, and that it carried less risk of side effects and adverse reactions than other available treatments.

22.    The marketing and promotion efforts of AstraZeneca, its advertisers, and sales force served to overstate the benefits of Seroquel, and minimize and downplay the risks associated with the drug. These promotional efforts were made, while fraudulently withholding important safety information from the physicians, the FDA, and the public, specifically that AstraZeneca was aware of numerous reports of diabetes associated with

5

the use of Seroquel, well beyond the background rate, and well beyond the rate for other anti-psychotic agents.

23.     On August 22, 2003, new reports were issued which confirmed previous studies describing a link between the class of atypical antipsychotics and diabetes. These new reports, described an increased incidence of diabetes in patients receiving Seroquel, than in patients receiving older anti-psychotics, or even other atypicals, including Zyprexa, Clozaril, and Risperdal.

24.     Clozaril (clozapine) was the first atypical introduced in the early 1990's. Risperdol, (risperidone), was approved for use in the United States in 1994. In September 1996 the Food and Drug Administration (FDA) approved another new atypical antipsychotic, Zyprexa (olanzapine), for use in schizophrenia, and Seroquel (quetiapine) was approved in September 1997.

25.     These look-alike, copycat drugs are nothing new in the pharmaceutical industry, as major manufacturers, who have poured so much money into marketing, and away from research are forced to introduce copycat drugs to the market rapidly, to avoid losing market share to its competitors. The copycat drugs are often accompanied by promises of better efficacy and less side effects, but typically, they are approved without the requirements of significant testing, riding the coat tails of drugs already on the market.

26.     The Japanese label for Seroquel provides a detailed warning regarding the risks of diabetes associated with Seroquel, and specifically informs physicians regarding the necessity of medical monitoring of patients on Seroquel. At the time the Plaintiff

6

ingested Seroquel, the Defendant had not adopted this safer; more accurate, label for the U.S. distribution of Seroquel.

27.    The Japanese label warns specifically of the diabetes risk, prominently in the beginning of the package label stating:

        a.    Quetiapine is contraindicated for use in patients with diabetes or a history of diabetes;

        b.    Quetiapine should be used with caution in patients with risk factors for diabetes, including hyperglycemia, obesity or a family history of diabetes;

        c.    Patients receiving quetiapine should be carefully monitored for symptoms of hyperglycemia and the drug should be discontinued if such symptoms occur. The symptoms of severe hyperglycemia include weakness, excessive eating, excessive thirst, and excessive urination; and,

        d.    Physicians should educate patients and their family members about the risk of serious hyperglycemia associated with the quetiapine and how to identify the symptoms of hyperglycemia.

26.    In regulatory action overseas, the Ministry of Health, Labor, and Welfare in Japan has ordered a Dear Doctor warning for AstraZeneca's quetiapine (Seroquel) after the ministry received 13 reports of serious side effects, including one death, since the drug's launch in that country in February 2001. Case reports involved elevated levels of blood glucose, diabetic ketoacidosis, and coma.

27.    Japanese researchers report that severe weight gain can be a serious side effect of combination therapy involving atypical antipsychotics and certain SSRIs. In particular, in a retrospective chart review, they identified the combination of risperidone and paroxetine as associated with severe weight gain—as much as 14 kg over four months in one patient—that also resulted in diabetic complications.

7

28.    While warning of the association of Seroquel with diabetes, increased glucose tolerance, ketoacidosis, weight gain, and the need for medical monitoring in Japan, AstraZeneca has left the US public and physicians in the dark.

## COUNT I

### NEGLIGENCE

29.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

30.    Defendant is the designer, manufacturer, and seller of the drug Seroquel.

31.    When placed in the stream of commerce in 1997, Seroquel was not accompanied by adequate warnings regarding the significant blood sugar related risks associated with the ingestion of Seroquel, particularly diabetes mellitus. The warnings given by the defendant did not accurately reflect the existence of the risk, let alone the incidence, symptoms, scope, or severity of such injuries.

32.    Defendant failed to perform adequate testing concerning the safety of the drug Seroquel in that adequate testing would have shown that Seroquel poses serious risk of blood sugar related problems which would have permitted adequate and appropriate warnings to have been given by Defendant to prescribing physicians, health insurance companies, the various states' formularies, and the consuming public.

33.    Defendant had a duty to exercise reasonable care in the design, manufacture, sale, and distribution of the drug, Seroquel, including a duty to assure that the product did not cause users to suffer from unreasonable, dangerous side effects when used alone or in foreseeable combination with other drugs.

8

34.    Defendant was negligent in the design, manufacturing, testing, advertising, marketing, promotion, labeling, warnings given, and sale of Seroquel in that, among other things, the Defendant:

a.    failed to use reasonable care to design an atypical anti-psychotic that was safe for its intended and foreseeable uses, not defective, and not unreasonably dangerous;

b.    failed to use reasonable care in designing and manufacturing Seroquel as to make it safe for its intended uses, not defective, and not unreasonably dangerous;

c.    recklessly, falsely, and deceptively represented or knowing omitted, suppressed, and/or concealed material facts regarding the safety and efficacy of Seroquel from prescribing physicians, the medical community at large, health insurers, state formularies;

d.    negligently marketed Seroquel despite the fact that risks of the drug were so high and the benefits of the drug were so speculative that no reasonable pharmaceutical company, exercising due care, would have done so;

e.    failed to use reasonable care to make reasonable tests, inspections, drug trials, and/or evaluations necessary to discover such defects and unreasonably dangerous conditions associated with defendant's drug, Seroquel;

f.    failed to comply with and/or to use reasonable care to comply with standards of care including accepted industry standards, FDA recommendations, government regulations, statutes, in the design, manufacture, affixing of warnings, and otherwise production and distribution of defendant's drug, Seroquel;

g.    failed to use reasonable care to timely remove and/or recall from the market, retrofit, and/or otherwise prevent the continued contact of Plaintiff or persons like Plaintiff with such defects and unreasonably dangerous conditions of Seroquel;

h.    failed to use reasonable care to investigate and/or use known and/or knowable reasonable alternative designs, manufacturing processes, and/or materials for Seroquel;

i.    failed to use reasonable care to warn Plaintiff of dangers known and/or reasonably suspected by defendant to be associated with Seroquel;

9

j.   failed to timely use reasonable care to discover the dangerous conditions or character of defendant's drug, Seroquel;

k.   failed to use due care in the design, testing and manufacturing of Seroquel so as to prevent the aforementioned risks, including, *inter alia*, diabetes mellitus, and the serious complications streaming therefrom including seizures, coma, death, liver disease, kidney disease, blindness, and other serious side effects including rapid weight gain, pancreatitis, increased thirst, urinary frequency and hyperglycemia, to individuals when Seroquel was used as a medication;

l.   failed to issue proper warnings regarding all possible adverse side effects associated with the use of Seroquel and the comparative severity and duration of such adverse effects, despite the fact that the defendant knew, or should have known, that numerous cases reports, adverse event reports, and other data that associated Seroquel with diabetes mellitus, and the serious complications streaming therefrom including seizures, coma, death, liver disease, kidney disease, blindness, and other serious side effects including rapid weight gain, pancreatitis, increased thirst, urinary frequency and hyperglycemia;

m.   failed to conduct adequate pre-clinical testing and post-marketing surveillance to determine the safety of Seroquel;

n.   failed to provide adequate training and information to medical care providers for the appropriate use of Seroquel;

o.   failed to warn Plaintiff and healthcare providers, prior to actively encouraging and promoting the sale of Seroquel, either directly, or indirectly, orally, in writing, or other media about the following:

(1)   The need for a battery of diagnostic tests to be performed on the patient prior to ingesting Seroquel to discover and ensure against potentially fatal side effects; and/or

(2)   The need for comprehensive, regular medical monitoring to ensure early discovery of potentially fatal side effects; and/or

(3)   The adverse side effects associated with the use of Seroquel, including, but not limited to, diabetes mellitus; and/or

(4)   The possibility of becoming disabled as a result of using Seroquel; and,

10

r.   failed to timely develop and implement a safer, alternative design of Seroquel, which would meet the same need without the known risks associated with Seroquel and which would not have made the product too expensive to maintain its utility.

35.   Despite the fact that the defendant knew or should have known that Seroquel caused unreasonable, dangerous side effects which many users would be unable to remedy by any means, the defendant continued to market Seroquel to consumers, including the Plaintiff, when there were safer alternative methods available.

36.   Defendant knew or should have known that consumers such as Plaintiff would foresee ably suffer injury as a result of defendant's failure to exercise ordinary care as described above.

37.   As a direct and proximate result and legal result of the defendant's failure to supply appropriate warnings for the drug, Seroquel, and as a direct and legal result of the negligence, carelessness, other wrongdoing and action of the defendant described herein, the Seroquel recipient Plaintiff ingested Seroquel and suffered significant injury.

38.   Defendant's negligence was a proximate cause of the harm suffered by the plaintiff members.

39.   As a direct and proximate cause and legal result of the defendant's negligence, carelessness, and the other wrongdoing and actions of the defendant as described herein, the plaintiff members have suffered physical personal injury, medical expense, future medical expense, loss of consortium, services, love and affection, and have incurred financial expenses and have suffered economic losses.

## COUNT II

## STRICT PRODUCT LIABILITY

### (Failure to Warn)

11

40.    Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

41.    The Seroquel manufactured and/or supplied by defendant was unaccompanied by proper warnings regarding all possible adverse side-effects and the comparative severity and duration of such adverse effects; the warnings given did not accurately reflect the severity or duration of the adverse side effects or the true potential and/or likelihood or rate of the side effects. Defendant failed to perform adequate testing in that adequate testing would have shown that Seroquel possessed serious potential side effects with respect to which full and proper warnings accurately and fully reflecting symptoms, scope and severity should have been made with respect to the use of Seroquel. Had the testing been adequately performed, the product would have been allowed to enter the market, if at all, only with warnings that would have clearly and completely identified the risks and dangers of the drug.

42.    The Seroquel manufactured and/or distributed and/or supplied by defendant was defective due to inadequate post-marketing warning or instruction because defendant failed to provide adequate warnings to users or consumers of Seroquel and continued to aggressively promote Seroquel.

43.    As the proximate cause and legal result of the defective condition of Seroquel as manufactured and/or supplied and/or distributed by defendant, and as a direct and legal result of the conduct of defendant described herein, plaintiff members have been damaged.

## COUNT III

## STRICT PRODUCT LIABILITY

12

**(Pursuant to Restatement Second of Torts 402a (1965))**

44.    Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

45.    The Seroquel manufactured and/or distributed and/or supplied by defendant was defective in design or formulation in that, when it left the hands of the manufacturers and/or suppliers and/or distributors, the foreseeable risks exceeded the benefits associated with the design and formulation of the drug.

46.    Alternatively, the Seroquel manufactured and/or distributed and/or supplied by defendant was defective in design or formulation in that, when it left the hands of the manufacturers and/or suppliers and/or distributors, it was unreasonably dangerous, it was more dangerous than an ordinary consumer would expect and more dangerous than alternative drugs available for the treatment of schizophrenia or bi-polar mania, namely so-called first generation anti-psychotics.

47.    There existed, at all times material hereto, safer alternative medications.

48.    Defendant did not perform adequate testing upon Seroquel.  Adequate testing would have revealed that Seroquel causes serious adverse effects with respect to which full and proper warnings accurately and fully reflecting symptoms, scope and severity should have been made.

49.    The Seroquel manufactured, designed, marketed, distributed and/or sold by defendant was unaccompanied by proper and adequate warnings regarding adverse effects associated with the use of Seroquel, and the severity and duration of such adverse effects; the warnings given did not accurately reflect the symptoms, scope or severity of adverse effects and did not accurately relate the lack of efficacy.

13

50.    Defendant did not warn the FDA of material facts regarding the safety and efficacy of Seroquel, which facts defendant knew or should have known.

51.    The Seroquel manufactured and/or distributed and/or supplied by defendant was defective due to inadequate post-marketing warning or instruction because, after the defendant knew or should have known of the risk of injury from Seroquel, they failed to provide adequate warnings to users or consumers of Seroquel and continued to promote Seroquel.

52.    As a result of the defective condition of Seroquel, plaintiff members have suffered damage and injury.

## COUNT IV

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

53.    Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

54.    The acts, omissions, and representations of the Defendant regarding the manufacturing, distribution and marketing of Seroquel as described in the foregoing paragraphs were intentional, reckless, extreme and outrageous. Defendant intentionally engaged in extreme and outrageous conduct when they intentionally and/or recklessly marketed Seroquel and then intentionally and/or recklessly concealed material information about Seroquel's potential serious adverse effects from Plaintiff and their physicians, hospitals, and medical providers.

55.    Defendant knew that Plaintiff would suffer mental distress and anxiety upon learning that Seroquel possessed a likelihood of serious adverse effects as described herein, thereby potentially causing Diabetes Mellitus.

14

56. As a result of Defendant's misconduct, Plaintiff sustained and will continue to sustain emotional and mental distress and anxiety.

## COUNT V

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

57. Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

58. Defendant negligently and carelessly manufactured, sold and distributed to Plaintiff Seroquel, which was defective.

59. Defendant negligently and carelessly concealed the defective nature of Seroquel from Plaintiff, their physicians, hospitals, and medical providers.

60. Defendant negligently and carelessly misrepresented the usefulness, quality and safety of Seroquel to Plaintiff, their physicians, hospitals, and medical providers.

61. The Defendant's negligence and carelessness directly impacted the Plaintiff in that they were induced to purchase and ingest the defective and dangerous Seroquel.

62. As a direct result of Defendant's misconduct alleged herein, Plaintiff have suffered and will continue to suffer emotional and mental distress and anxiety from the fear of knowing there is a likelihood of serious complications or death from Diabetes Mellitus, which was caused by Defendant's drug, Seroquel.

## COUNT VI

### COMMON LAW FRAUD

63. Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

64. Defendant either knew or should have known that Seroquel was dangerous

15

and not as effective for its purpose as represented, and posed greater risks than disclosed, and otherwise not as represented to be as alleged above.

65.    Defendant was under a duty to disclose this information to the Plaintiff under the common law as well as laws requiring it not to engage in false and deceptive trade practices, and as otherwise alleged in this complaint, because Defendant made representations and partial disclosures concerning the nature and quality of this product which they had a duty to correct, because Defendant was in a superior position to know the true state of the facts about the dangerous and defective nature of Seroquel and its known risks to the Plaintiff.  These deliberate and/or intentional omissions of material facts and misrepresentations include but are not limited to:

      a.    suppressing, failing to disclose and mischaracterizing the known risks of ingesting Seroquel;

      b.    omitting material information showing that Seroquel was no more effective than other anti-psychotic drugs on the market available;

      c.    failure to timely and fully disclose the actual results of clinical tests and studies related to Seroquel;

      d.    failing to issue adequate warnings concerning the risks and dangers of ingesting Seroquel which would disclose the nature and extent of the side effects of Seroquel;

      e.    failing to disclose that adequate and/or standard and/or generally accepted standards for pre-clinical and clinical testing had not been done;

      f.    failing to disclose that adequate and/or standard and/or generally accepted standards for post-marketing testing had not been done; and,

      g.    making the representations concerning the safety, efficacy and benefits of Seroquel as detailed in this complaint without full and adequate disclosure of the underlying facts which rendered such statements false and misleading.

16

66.     Plaintiff did not know, and could not learn, the material facts and important information Defendant omitted and suppressed. The facts and information suppressed and concealed by Defendant is material, and of such a nature that it can be reasonably presumed that the suppression and concealment of such facts caused, contributed to, and/or was a substantial factor in causing Plaintiff to ingest Seroquel and be exposed to such unnecessary risks.

67.     As a result of Defendant's fraud, suppression and omission of material facts, the Plaintiff acted to their detriment in purchasing and ingesting Seroquel, which they would not have purchased or ingested had they been told the truth.

68.     As a result of Defendant's practices, Plaintiff has suffered actual damages in that they have purchased and ingested Seroquel which is dangerous and defective in that it has caused and will continue to cause Plaintiff to suffer with Diabetes Mellitus, expenses for medical testing, health monitoring and/or treatment.

69.     As a result of the fraud by Defendant, Plaintiff has ingested a defective product, Seroquel, which has caused them to suffer diabetes and diabetes related conditions.

## COUNT VII

### BREACH OF EXPRESS WARRANTY

70.     Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

71.     Defendant expressly warranted that Seroquel was safe and well accepted by clinical studies.

17

72.    Seroquel does not conform to these express representations because Seroquel is not safe and has high levels of serious, life-threatening, side effects.

73.    As a direct and proximate result of the breach of said warranties, Plaintiff developed Diabetes Mellitus, through their ingestion of Seroquel.

## COUNT VIII

## BREACH OF IMPLIED WARRANTY

74.    Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

75.    At the time Defendant marketed, sold and distributed Seroquel for use by Plaintiff, Defendant knew of the use for which Seroquel was intended and impliedly warranted Seroquel to be of merchantable quality and safe and fit for such use.

76.    Plaintiff reasonably relied upon the skill and judgment of Defendant as to whether Seroquel was of merchantable quality and safe and fit for its intended use.

77.    Contrary to such implied warranty, Seroquel was not of merchantable quality or safe or fit for its intended use, because Seroquel was and is unreasonably dangerous and unfit for the ordinary purposes for which it was used as described above.

78.    As a direct and proximate result of the breach of implied warranty, Plaintiff developed Diabetes Mellitus, through their ingestion of Seroquel.

## COUNT IX

## UNJUST ENRICHMENT

79.    Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

80.    Defendant has been unjustly enriched in the amount of the profits they have

18

JS-44
(Rev.1/05 DC)

**CIVIL COVER SHEET**

| I (a) PLAINTIFFS | DEFENDANTS Astra Zeneca Pharmaceuticals LP, |
|---|---|
| ERMA ROSENTHAL | Astra Zeneca LP, Zeneca, Inc. |
| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____ (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT New Castle County (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) Kenneth W. Smith, Aylstock, Witkin, Sasser, PL 4400 Bayou Blvd, #58, Pensacola, FL 32503 | ATTORNEYS (IF KNOWN) |

| II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY) | III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!** | | | |
|---|---|---|---|---|
| | | PTF | DFT | PTF DFT |
| □ 1 U.S. Government Plaintiff | □ 3 Federal Question (U.S. Government Not a Party) | Citizen of this State □ 1 | □ 1 | Incorporated or Principal Place of Business in This State □ 4 □ 4 |
| □ 2 U.S. Government Defendant | ☒ 4 Diversity (Indicate Citizenship of Parties in item III) | Citizen of Another State ☒ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State ☒ 5 ☒ 5 |
| | | Citizen or Subject of a Foreign Country □ 3 | □ 3 | Foreign Nation □ 6 □ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| □ A. *Antitrust* | ☒ B. *Personal Injury/ Malpractice* | □ C. *Administrative Agency Review* | □ D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| □ 410 Antitrust | □ 310 Airplane □ 315 Airplane Product Liability □ 320 Assault, Libel & Slander □ 330 Federal Employers Liability □ 340 Marine □ 345 Marine Product Liability □ 350 Motor Vehicle □ 355 Motor Vehicle Product Liability □ 360 Other Personal Injury □ 362 Medical Malpractice ☒ 365 Product Liability □ 368 Asbestos Product Liability | □ 151 Medicare Act **Social Security:** □ 861 HIA ((1395ff) □ 862 Black Lung (923) □ 863 DIWC/DIWW (405(g) □ 864 SSID Title XVI □ 865 RSI (405(g) **Other Statutes** □ 891 Agricultural Acts □ 892 Economic Stabilization Act □ 893 Environmental Matters □ 894 Energy Allocation Act □ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment. *(If Antitrust, then A governs)* |

### □ E. *General Civil (Other)* OR □ F. *Pro Se General Civil*

| **Real Property** □ 210 Land Condemnation □ 220 Foreclosure □ 230 Rent, Lease & Ejectment □ 240 Torts to Land □ 245 Tort Product Liability □ 290 All Other Real Property **Personal Property** □ 370 Other Fraud □ 371 Truth in Lending □ 380 Other Personal Property Damage □ 385 Property Damage Product Liability | **Bankruptcy** □ 422 Appeal 28 USC 158 □ 423 Withdrawal 28 USC 157 **Prisoner Petitions** □ 535 Death Penalty □ 540 Mandamus & Other □ 550 Civil Rights □ 555 Prison Condition **Property Rights** □ 820 Copyrights □ 830 Patent □ 840 Trademark **Federal Tax Suits** □ 870 Taxes (US plaintiff or defendant □ 871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty** □ 610 Agriculture □ 620 Other Food &Drug □ 625 Drug Related Seizure of Property 21 USC 881 □ 630 Liquor Laws □ 640 RR & Truck □ 650 Airline Regs □ 660 Occupational Safety/Health □ 690 Other **Other Statutes** □ 400 State Reapportionment □ 430 Banks & Banking □ 450 Commerce/ICC Rates/etc. □ 460 Deportation | □ 470 Racketeer Influenced & Corrupt Organizations □ 480 Consumer Credit □ 490 Cable/Satellite TV □ 810 Selective Service ☒ 850 Securities/Commodities/ Exchange □ 875 Customer Challenge 12 USC 3410 □ 900 Appeal of fee determination under equal access to Justice □ 950 Constitutionality of State Statutes □ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

| □ G. *Habeas Corpus/ 2255* | □ H. *Employment Discrimination* | □ I. *FOIA/PRIVACY ACT* | □ J. *Student Loan* |
|---|---|---|---|
| □ 530 Habeas Corpus-General<br>□ 510 Motion/Vacate Sentence | □ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | □ 895 Freedom of Information Act<br>□ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br>*(If pro se, select this deck)* | □ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| □ K. *Labor/ERISA (non-employment)* | □ L. *Other Civil Rights (non-employment)* | □ M. *Contract* | □ N. *Three-Judge Court* |
|---|---|---|---|
| □ 710 Fair Labor Standards Act<br>□ 720 Labor/Mgmt. Relations<br>□ 730 Labor/Mgmt. Reporting & Disclosure Act<br>□ 740 Labor Railway Act<br>□ 790 Other Labor Litigation<br>□ 791 Empl. Ret. Inc. Security Act | □ 441 Voting (if not Voting Rights Act)<br>□ 443 Housing/Accommodations<br>□ 444 Welfare<br>□ 440 Other Civil Rights<br>□ 445 American w/Disabilities-Employment<br>□ 446 Americans w/Disabilities-Other | □ 110 Insurance<br>□ 120 Marine<br>□ 130 Miller Act<br>□ 140 Negotiable Instrument<br>□ 150 Recovery of Overpayment & Enforcement of Judgment<br>□ 153 Recovery of Overpayment of Veteran's Benefits<br>□ 160 Stockholder's Suits<br>□ 190 Other Contracts<br>□ 195 Contract Product Liability<br>□ 196 Franchise | □ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☒1 Original Proceeding    □ 2 Removed from State Court    □ 3 Remanded from Appellate Court    □ 4 Reinstated or Reopened    □ 5 Transferred from another district (specify)    □ Multi district Litigation    □ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 U.S.C. § 1332. There is complete diversity of citizenship between Plaintiff and Defendant.

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A CLASS   □   ACTION UNDER F.R.C.P. 23    **DEMAND $**    Check YES only if demanded in complaint   **JURY DEMAND:** ☒ YES   □ NO

**VIII. RELATED CASE(S) IF ANY**    (See instruction)   □ YES   ☒ NO    If yes, please complete related case form.

DATE /-30-07    SIGNATURE OF ATTORNEY OF RECORD    *Kenneth W. Smith*

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.